[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action returnable August 18, 1992 claiming a dissolution of marriage and other relief brought by the plaintiff wife against the defendant husband. The plaintiff filed an amended complaint under date of May 12, 1994. The only substantive change in the amended complaint was to allege the year of marriage as CT Page 1326-K 1982; otherwise said amended complaint is identical to the complaint dated July 22, 1992, originally filed in this action. The defendant filed an answer under date of September 18, 1992, which the court will treat as responsive to the plaintiff's amended complaint.
The plaintiff, whose date of birth is June 11, 1959, is presently 35 years of age. She appears to enjoy good health. The plaintiff is a high school graduate and also attended secretarial school for one year. She previously worked for GTE in Stamford. At the present time she works for Planned Parenthood in Norwalk as a receptionist/administrator. She works approximately 25-30 hours per week in order to accommodate her children's school hours. She earns $9.56 per hour. Her vocational talents appear to be somewhat limited, which will therefore limit her opportunity for earnings from employment. Fortunately, she is bilingual, speaking and reading both Spanish and English fluently.
The defendant, whose date of birth is October 30, 1948, is presently 46 years of age. The defendant was born and raised in Italy and then moved to Switzerland at the approximate age of 15. CT Page 1326-L The defendant's formal education is somewhat limited. Prior to coming to the United States in 1972 he worked in the hotel industry and as a result learned to speak and understand several languages. Although the defendant initially worked as a chef, his main occupation has been in landscaping, snow plowing and masonry work. The defendant appears to be in good health and is very muscular. Although the defendant claims he has a "bad back", this contention is unsubstantiated by either documentary or third party testimony. Based on the defendant's financial affidavit dated October 5, 1994, it appears to the court that the defendant works when work is available, but is not very aggressive in obtaining as much work as possible so as to enhance and increase his income. This court feels that the defendant's outgoing, gregarious personality, together with his vocational skills would cause the defendant to be more gainfully employed than the defendant is presently inclined to be. Thus, the defendant has a greater amount and source of income and also a greater opportunity for the future acquisition of capital assets and income than the plaintiff.
The relationship/union of the parties resulted in the birth of Giovanni Chiappardi, born December 1, 1981. Giovanni is presently CT Page 1326-M 13 years of age and attends the eighth grade at St. Aloysius School in New Canaan. Giovanni has resided exclusively with Mr. Chiappardi since August of 1992, approximately one month after the plaintiff brought the instant dissolution of marriage proceedings. Sister Peggy, principal at St. Aloysius, testified that Giovanni's grades were good until the school year 1992-93 in which there was a very marked decrease in his grades, going from A's and B's to B's and C's. This decrease in grades is the result of the conflict arising from the dissolution of marriage proceedings which has been thrust upon Giovanni. At the outset of the dissolution of marriage proceedings the defendant intensified his efforts to relate to and bond with Giovanni. The defendant has been successful in his efforts. However this is to the detriment of Giovanni, Maria Rosa Chiappardi, Giovanni's sister, and Ginnette Chiappardi.
This relationship/union also produced Maria Rosa Chiappardi, whose date of birth is April 24, 1985. At the present time she is almost nine years of age. Neither Giovanni nor Maria suffer from any physical infirmities and both appear to enjoy good health. Maria appears to be quiet, who longs for a sibling relationship with her brother Giovanni. However, she has been deprived of this CT Page 1326-N natural relationship by the defendant, and also at times by the plaintiff. Maria also attends St. Aloysius school and is in the fourth grade. She has had some difficulty with academics and requires extra help to attain average grades.
The parties were married on March 26, 1982, approximately ten years before the plaintiff instituted the instant dissolution of marriage proceedings. Giovanni, born on December 1, 1981, was initially named Mario Berrios, which is the maiden name of the plaintiff. Initially the defendant denied his parenthood of Giovanni and elected to disregard and deny young Mario Berrios. His name was changed to Giovanni Chiappardi shortly after the marriage of the parties. It is interesting to note that the reception incident to the marriage of the parties was celebrated as both a marriage reception and baptism reception for Giovanni.
The marriage of the parties was somewhat strained and the plaintiff separated from the defendant on at least two occasions prior to the plaintiff instituting the pending dissolution of marriage proceedings. The defendant dominated and controlled the plaintiff from the very outset. For the first five years of their CT Page 1326-O marriage the parties resided with the defendant's sister and her husband and an extended family. The plaintiff was not allowed to have free and unhindered contact with her family in the immediate vicinity. Ultimately the plaintiff was smothered by the defendant and his extended family. The defendant controlled the plaintiff in many respects including where she went, where she did not go, her friends and her spending. In fact the defendant required the plaintiff to account for all her spending.
The plaintiff testified that the marriage broke down for several reasons, including she felt that she was a single parent even though married, the defendant failed to support the children's education and activities, the defendant did not approve of the plaintiff's volunteer work, the defendant isolated the plaintiff from her family, and the defendant did not support the plaintiff's personal and/or professional endeavors. The defendant testified that prior to the institution of the instant dissolution of marriage proceedings the plaintiff was a good and loving wife and mother. However, subsequent to the institution of the instant dissolution of marriage proceedings, the defendant's attitude towards the plaintiff took a 180° turn for the worse. From July CT Page 1326-P 1992, the defendant obsessively pursued a personal vendetta against the plaintiff. This vendetta included accusations of illicit drug use by the plaintiff, promiscuous sexual activities by the plaintiff, voodoo-type behavior by the plaintiff, stealing of the defendant's money by the plaintiff, and alienation of the parties' son Giovanni from the plaintiff, depriving the plaintiff of the companionship and visitation of Giovanni. The defendant hired private detectives to follow the plaintiff and report on her doings in an effort to prove that the defendant was an unfit mother and was engaged in the use and/or sale of illegal drugs. Despite the defendant's extensive efforts, the defendant failed to prove that the plaintiff was involved in the use and/or sale of elicit drugs, that the plaintiff engaged in promiscuous sexual activities, that the plaintiff stole money from him and the plaintiff committed voodoo acts against him. Further, the plaintiff was not an unfit mother.
Plaintiff's conduct towards the defendant was less than exemplary and antagonistic. However, the court finds that her conduct was reactionary and borne of frustration precipitated by the defendant's continual attacks on her. The court observes that CT Page 1326-Q the charges and counter chargers, the accusations and counter accusations and the continuous negative attitude towards each other and counter-productivity of the parties has led only to an intolerable exacerbation of their situation. The parties must learn to communicate towards a productive future with their own well-being in mind, together with the well-being of their children.
In determining the proper orders in this case, the court must consider the factors set forth in Connecticut General Statutes §§ 46b-81 and 46b-82.
With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound CT Page 1326-R discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes of dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties, (citation omitted), no single criterion is preferred over all others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente. 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
As has been said by the Appellate Court in the recent case ofEmanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992): CT Page 1326-S "General Statutes § 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v.O'Neill, 207 Conn. 806, 540 A.2d 374 (1988). . . .
The statutory factors for determining alimony in § 46b-82 are almost identical to the factors used to distribute property in § 46b-81(c)."
The court has considered all of the criteria of §§ 46b-81 and46b-82 of the General Statutes and all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368
(1981), this court will not recount those statutory criteria and the evidence other than is stated herein. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1992).
Suffice to say that the court must consider all the statutory CT Page 1326-T criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Perry, 4 Conn. App. 307, 313-14 (1991).
In addition, the court has also considered Connecticut General Statutes §§ 46b-56, 46b-56a, 46b-62 and 46b-84, together with all the evidence pertinent in this case to said statutes, and further such case law as also pertains to said statutes.
The court, in addition to the foregoing findings, finds as follows:
1) There is requisite jurisdiction;
 2) The allegations of the complaint have been proved and are true;
 3) There has been an irretrievable breakdown of the marriage; and
4) Although both parties have contributed to the breakdown CT Page 1326-U of the marriage, the court finds that the defendant is substantially more at fault than the plaintiff.
The court enters the following orders:
The marriage of the parties is hereby dissolved on the grounds of irretrievable breakdown.
Custody and Visitation
The court recognizes that custody and visitation has been intensely contested. The court ordered a custody/visitation study which was completed by Roger J. Grenier who is the Family Relations supervisor for the Superior Court at Stamford. Roger Grenier prepared a thoughtful, sensitive and well-reasoned recommendation which the court subscribes to. In addition, this recommendation is also consistent with the recommendation of Attorney Elizabeth T. Sharpe, counsel for the minor child, and is also consistent with the recommendation of Dr. Larry Rosenberg, who was engaged to do a custody evaluation. Also, the recommendation of Roger Grenier is not inconsistent with the findings of Ronald C. Naso, a therapist CT Page 1326-V and psychologist who was engaged for the treatment of Giovanni. Therefore, it is ORDERED that the parties have joint legal custody of the children Giovanni and Maria, but that the primary residence for Giovanni be with the defendant and that the primary residence for Maria be with the plaintiff. It is further ORDERED that the children be able to be with each other more than at present, and also the time each child spends with each parent be maximized and to that end it is ORDERED that the children be together every weekend from school dismissal on Friday (2:00 P.M.) to Monday morning, returning to school at 8:00 A.M.; that each weekend the visits will be alternated between the mother's home and the father's home and that there should be no deviation from this schedule. In addition, the children shall be together one week day each week on Wednesday from school dismissal at 2:00 P.M. to the next morning at 8:00 A.M. and this week day visit is to alternate each week from the mother's home to the father's home. It is ORDERED that regular weekly counseling be instituted immediately for the parents and their children. It is also ORDERED that both parents immediately enroll and participate in a parent education program.
Proceeds re Sale of 2 Oakfield Road
CT Page 1326-W
The court finds that Cono Somma was the owner of one-half of the real estate identified as 2 Oakfield Road, Norwalk, Connecticut. Further, the defendant Vincenzo Chiappardi was the owner of one-half interest therein. The court further finds that the closing statement attached to the defendant's trial brief dated October 21, 1994 is a true, correct and accurate reflection of the money proceeds and disbursements incident to the sale of said real estate. The defendant's attorney properly allocated the sum of $63,005.90 to Cono Somma. In addition, pursuant to the agreement of the parties, dated August 15, 1994, which agreement was approved by the undersigned, the sum of $4,000.00 was paid over to the plaintiff Ginnette Chiappardi; and further the sum of $14,000.00 was properly paid over to the defendant Vincenzo Chiappardi. The court concludes that each party has received the sum of $9,000.00 from the proceeds of the sale of the defendant's interest in 2 Oakfield Road, Norwalk, Connecticut. Now there leaves to be distributed, pursuant to the order of this court, the sum of $45,005.91. The court finds that a fair, reasonable and equitable distribution of the defendant's net one-half interest should be 75% in favor of the plaintiff and 25% in favor of the defendant. CT Page 1326-X Therefore, the defendant should receive $15,751.48 representing 25% of $63,005.90. Therefore, having previously received $9,000.00, the defendant should receive $6,751.48 of the escrow balance, and the plaintiff shall receive $38,254.43 from the escrow balance. Any interest accruing on the escrow balance of $45,005.91 should be distributed 85% ($38,254.43/45,005.91[ths]) to plaintiff and 15% ($6,751.48/45,005.91[ths]) to the defendant. In addition, the court notes that defendant's counsel is or was holding the sum of $3,000.00 in escrow re repairs/radon. The cost of any repairs shall be borne 50% by the Cono Somma and 50% by the defendant. Any unexpended monies from said escrow re repairs/radon shall be distributed 50% to Cono Somma, 37.5% to the plaintiff and 12.5% to the defendant. In making the foregoing ORDERS, the court recognizes that all expenses and disbursements of sale were borne 50% by the defendant and 50% by Cono Somma, and further that the court has distributed only the proceeds of sale and does not order a readjustment of all those expenses and disbursements paid by the defendant on a 50% basis to a 75%/25% basis as ordered relativeonly to the proceeds of sale.
The court also ORDERS that the defendant shall be responsible, CT Page 1326-Y for 75% of any capital gains tax obligation attributable to a one-half interest in the sale of the premises at 2 Oakfield Road and the defendant shall be responsible for 25% of any capital gains tax obligation attributable to the one-half interest in the sale of' said real estate. The court further orders that the parties shall cooperate with each other in determining their respective capital gains tax obligation.
Re 11 Pleasant Street, Norwalk, Connecticut
The court finds that the defendant owns a one-half interest in said real estate identified as 11 Pleasant Street, Norwalk, Connecticut. The court further finds that the value of said 11 Pleasant Street, Norwalk, Connecticut, is $125,000.00 of which the defendant has a one-half interest therein. The defendant's one-half interest, for equity purposes, is unencumbered and therefore his net equity is $62,500.00. The court finds that a fair, reasonable and equitable division of this particular property is $75% [75%] in favor of the plaintiff and 25% in favor of the defendant.
However, the court finds that the defendant should retain CT Page 1326-Z ownership and possession of his one-half interest in said real estate. Therefore, the defendant shall give to the plaintiff a promissory note in the principal amount of $46,875.00 bearing interest in arrears at the rate of 7 1/2% simple interest per annum. Interest only payments in the amount of $292.97 shall be paid monthly commencing May 1, 1995 as the court orders the promissory note and mortgage hereinafter ordered to be accomplished no later: than March 31, 1995. Further, the entire principal balance together with any unpaid interest accruing thereon shall be due and payable on April 1, 1998. The defendant shall secure said promissory note with a mortgage in favor of the plaintiff of the defendant's one-half interest to said real estate identified as 11 Pleasant Street, Norwalk, Connecticut. The promissory note and mortgage shall be in the usual Connecticut form and style including attorneys fees in the event of default of payment of the promissory note, protecting or sustaining the lien of said mortgage and the defendant shall be responsible to pay all municipal charges including taxes, water and sewer service (if any) as the same may become due and payable and failure to do so shall constitute a default under said promissory note and mortgage. Said promissory note and mortgage shall contain an acceleration clause in the event CT Page 1326-AA of default thereunder.
"Piggy Bank" Escrow
The court finds that the contents and proceeds of the Piggy Bank was not a completed gift to Giovanni and/or Maria, but merely a convenient denomination for said asset. This asset should be divided equally between the parties, subject to the following ORDER. The parties, by agreement, have agreed to pay the compromised sum of $5,000.00 to Attorney Elizabeth T. Sharpe. These monies may be paid to Elizabeth T. Sharpe, together with her expense of $80.00 to provide for a substitute teacher for two days of trial. However, the court notes that the plaintiff is entitled to a credit in the amount of $500.00 which the plaintiff previously paid to Attorney Sharpe. Therefore, the plaintiff's net distribution is one-half of the proceeds of the Piggy Bank plus one-half of any interest accruing on said account, minus $2,040.00. The defendant's distributive share of the Piggy Bank account is one-half thereof plus one-half of any accrued interest thereon, less $2,540.00.
Custodial Savings Bonds
CT Page 1326-BB
The defendant shall retain such custodial savings bonds which he holds in custody for Giovanni for the benefit of Giovanni, free of any claim by the plaintiff.
Alimony
The defendant shall pay to the plaintiff the sum of $600.00 per month as alimony. The payment of monthly periodic alimony shall terminate upon any of the following events, whichever occurs soonest:
A) death of the defendant;
B) death of the plaintiff;
C) plaintiff's remarriage;
 D) cohabitation of the plaintiff with an unrelated male under the provisions of § 46b-86(b) of the Connecticut General Statutes; or CT Page 1326-CC
E) nine years.
The court finds that time-limited alimony is justified in this particular case because the plaintiff is limited in her vocational skills and employability at this time, and further, the plaintiff is unable to maximize her self-sufficiency during their children's child rearing ages. The plaintiff's full time employment is presently limited to the hours in the day when her children are in school and therefore this is a further limiting factor on her ability to gain or attempt to gain more income under the present circumstances. In nine years the minor child Maria will be then 18 years of age and legally emancipated. In addition, the court also observes that the plaintiff is only 35 years of age and this was a 10-year marriage for all intents and purposes.
Child Support
In accordance with the defendant's Connecticut Child Support Guidelines analysis attached to his trial brief dated October 21, 1994, the court ORDERS the defendant to pay to the plaintiff the CT Page 1326-DD sum of $54.00 per week as child support. In addition, the parties are ordered to cooperate in obtaining medical and dental insurance for and on behalf of the minor children. Any costs of said insurance shall be borne equally by the parties. In addition, all uncovered or unreimbursed medical and/or dental expenses incurred by or on behalf of either child shall be borne equally by the parties. The court further ORDERS that the payment of medical and dental expenses is subject to Connecticut General Statutes §46b-84(c).
Personal Property
The parties are ORDERED to cooperate in resolving any disputes and differences regarding personal property and are further referred to Family Relations for mediation regarding any unresolved disputes relative to any particular items of personal property. In the event the parties are unable to resolve the issue of any particular items of personal property, the court shall retain jurisdiction over the same. Upon appropriate motion the court will set a hearing regarding any item of personal property.
Re Liabilities
CT Page 1326-EE
A) Dr. Larry Rosenberg — The defendant is ORDERED to pay Dr. Rosenberg the sum of $1,175.00 within 90 days of the date hereof. The plaintiff is ORDERED to pay Dr. Rosenberg the sum $1,295.00 within 90 days of the date hereof.
B) Ronald C. Naso — The defendant is ORDERED to pay Dr. Naso the sum of $945.00 within 90 days of the date hereof. The plaintiff is ORDERED to pay Dr. Naso the sum of $945.00 within 90 days of the date hereof.
C) Other Liabilities — Reference is hereby made to that list of liabilities as set forth on the defendant's financial affidavit dated October 5, 1994. The defendant shall be responsible for and hold the plaintiff harmless from any and all liabilities listed thereon with the exception of Elizabeth Sharpe, Esq., Dr. Naso, and Dr. Rosenberg, for which liabilities the court has heretofore made specific order.
The court makes specific reference to the liabilities listed in the plaintiff's financial affidavit dated October 5, 1994. The CT Page 1326-FF plaintiff shall be liable and pay said liabilities and hold the defendant harmless therefrom on all liabilities listed therein with the exception of Dr. Larry Rosenberg, for which the court has made specific order.
Attorneys' Fees
The court finds that each party shall be responsible for their respective attorney's fees and therefore the court does not make any order that either shall contribute to the other's attorney's fees.
Miscellaneous Orders
A) Motor Vehicles — The plaintiff shall retain the automobile (Buick) as listed on her financial affidavit dated October 5, 1994, free of any claim by the defendant.
The defendant shall retain the 1991 Alfa Romeo free and clear of any claim by the plaintiff.
As regards said motor vehicles, each party shall cooperate CT Page 1326-GG in effectuating the transfer of title if necessary.
B) Checking/Savings Account — The defendant shall retain all right, title and interest to the Connecticut National Bank checking account as shown on the defendant's financial affidavit dated October 5, 1994, free and clear of any claim by the plaintiff.
C) Stock — The plaintiff shall retain all right, title and interest to the GTE common stock shown on the plaintiff's financial affidavit dated October 5, 1994, free of any claim by the defendant.
D) The defendant shall retain all right, title and interest in and to any real estate or personal property owned by the defendant located in Italy, free and clear of any claim by the plaintiff.
E) The defendant shall retain Giovanni's bedroom set and business assets (truck and tools) as shown on the defendant's financial affidavit dated April 26, 1995, free of any claim by the plaintiff.
F) Any and all other property standing in the respective names CT Page 1326-HH of either party shall be retained by the respective owner, free and clear from the other.
John W. Moran, Judge